AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| United States of America </br> v. </br> MARC BENJAMIN NAHABEDIAN </br> </br> *Defendant(s)* | Case No. </br> 20-MJ-6442-Valle |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 2014 through July 2019__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of Government Funds |

This criminal complaint is based on these facts:

See attached affidavit.

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Ramon A. De Leon, Special Agent, SSA-OIG
*Printed name and title*

Sworn in my presence by FACETIME Video

Date: 09/15/2020

_____
*Judge's signature*

City and state: Fort Lauderdale, Florida

Alicia O. Valle, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ramon A. De Leon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Social Security Administration (SSA) Office of Inspector General ("SSA-OIG") and have been so since February 2019. Prior to that, I was a Special Agent with the U.S. Department of State, Diplomatic Security Service ("DSS") for approximately six years. Throughout the course of my career, I have participated and directed numerous criminal investigations involving identity theft, fraud against the government, and other illegal schemes affecting the government and financial institutions. Through my training and experience, I am familiar with the tactics, methods, and techniques individuals use to commit various types of fraud.

2. This affidavit is made in support of a complaint charging Marc Benjamin Nahabedian ("NAHABEDIAN") with a violation of Title 18, United States Code, Section 641, commonly referred to as Conversion, Embezzlement, and Theft of Government Funds. The facts set forth in this affidavit are based on information obtained from other individuals in this investigation, as well as review of documents and records related to this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant; as such, it does not set forth all of my knowledge about this matter.

### DEFINITIONS

#### *Social Security Retirement Insurance Benefit*

3. The SSA administers the Retirement Insurance Benefits program under the authority of the Social Security Act of 1935, as amended; Public Laws 74-271, 92-603, 95-216, 96-473, 96,-499, 97-123; 42 U.S.C §§ 401-433.

1

4. The Social Security Administration Act and related laws establish a number of programs that have the basic objective of providing for material needs of individuals and their families including retirement insurance. The objective of the retirement insurance benefits is to replace part of the earnings lost because of retirement. Monthly benefits are paid to eligible workers and their eligible dependents.

5. Monthly retirement insurance benefits (also called old age insurance benefits) may be payable to an individual age 62 or over who meets the earnings requirement to being fully insured. Monthly spouse's and child's insurance benefits are payable on the earnings record of an individual entitled to retirement benefits if they are eligible auxiliaries.

6. Social Security benefits are based upon the worker's earnings as established by the SSA. For this reason, the SSA maintains a complete record of the earnings of each worker covered by Social Security. These earnings are used to determine entitlement to retirement benefits and the monthly amount of benefits.

7. SSA policy states that entitlement to retirement insurance benefits ends the month before the month in which the beneficiary dies. Since the claimant must be entitled for an entire month, the month in which death occurs is not an entitlement month.

**PROBABLE CAUSE**

8. The investigation was initiated when the SSA-OIG Office of Audit (OA), conducted an audit of Florida death records and SSA beneficiary records, in order to identify possible deceased individuals continuing to receive SSA benefit payments. The audit determined that Shelah H. Dillard ("Dillard") was a recipient of Social Security retirement benefits, from January 2005 through July 2019, although she had died in Florida on July 4, 2014. The OA referred the matter to the SSA-OIG Jacksonville office for investigation, which notified the SSA of Dillard's death, contacted Center State Bank located in Davenport, Florida, where the account in which the

funds were being deposited, learned that no funds remained in the account, and determined that NAHABEDIAN was the primary subject of the theft, who had since moved to South Florida. The SSA-OIG Jacksonville office transferred the investigation to the SSA-OIG Fort Lauderdale office.

9. Florida Department of Health records list NAHABEDIAN, Dillard's son, as the informant in the death certificate issued for Dillard, with a recorded address of 5130 Pecan Road, Silver Springs Shores, FL 34472.

10. SSA records list 5130 Pecan Road, Ocala, FL 34472, as the address on record for Dillard, and indicate that her retirement benefits were electronically deposited in a checking account monthly, in an amount of $950.40, held at Center State Bank ending in 1604. The SSA determined that approximately $59,406.60 was deposited in Dillard's Center State Bank account after her death after her death on July 4, 2014.

11. The Florida Department of Highway Safety and Motor Vehicles, Driver and Vehicle Information Database lists 5130 Pecan Road, Ocala, FL 34472 as a mailing address for NAHABEDIAN from on or about April 28, 2014 through on or about September 29, 2015.

12. Center State Bank records obtained pursuant to a Grand Jury Subpoena indicated that NAHABEDIAN and his wife were authorized signers on the account, and showed that on July 4, 2014, the day of Dillard's death, the account held a negative balance of -$5.89. Moreover, the only recurring deposits into the account during the period covered by the monthly statements after DILLARD's death were the monthly SSA Title 2 benefits paid to Sheila H. Dillard.

13. Thereafter, the records show that the funds were generally withdrawn from the account via recurring debit, ACH transactions, and personal checks, including multiple recurring credit card payments from the account, specifically listing NAHABEDIAN as the beneficiary including payments to NAHABEDIAN's accounts with Barclays Bank, Capital One, Discover,

American Express, Chase, PNC, and Merrick Bank, as well as numerous other accounts and purchases including Best Buy.

14. On February 28, 2020, SSA-OIG conducted an interview with NAHABEDIAN at his current address in Fort Lauderdale. During the course of the interview, NAHABEDIAN admitted that he was aware that his deceased mother continued to receive SSA benefits after her death and that he was a joint account holder in the Center State Bank account where the SSA had deposited his mother's benefits. Thereafter, he admitted that he had nonetheless used the SSA funds deposited into the account after his mother's death, and since his move down to Ft. Lauderdale, to pay for his personal expenses, because his business was not doing well at the time.

## CONCLUSION

15. Based on the foregoing, I submit there is probable cause to believe that NAHABEDIAN knowingly converted approximately 60 monthly payments, totaling $59,406.60 in Social Security retirement benefits intended for his mother, from July 2014 through July 2019, in violation of Title 18, United States Code, Section 641.

*FURTHER YOUR AFFIANT SAYETH NAUGHT.*

Special Agent Ramon A. De Leon
Social Security Administration
Office of Inspector General

Sworn to and subscribed before me
via FaceTime this 15th day of September, 2020.

Hon. Alicia O. Valle
U.S. Magistrate Judge

4